**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-4276
_____

HOLLY SMITH,
                          Appellant

v.

THE NEW JERSEY DIVISION OF CHILD PROTECTION AND PERMANENCY,
"DCP&P" f/k/a Division of Youth and Family Services;
LISA VON PIER, in her official capacity as Director of DCP&P/Assistant Commissioner
of the New Jersey Department of Children and Families, "DCF";
ALLISON BLAKE, in her official capacity as the Commissioner of DCF;
EUGENE ADAMS, in his official capacity;
STEVE LOPEZ, in his official capacity

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 3-16-cv-04530)
District Judge: Honorable Peter G. Sheridan
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
November 16, 2017
_____

Before:  VANASKIE, SHWARTZ, and FUENTES, *Circuit Judges*

(Filed February 28, 2018)

OPINION[*]

VANASKIE, *Circuit Judge.*

Appellant Holly Smith appeals the District Court's dismissal of her complaint. Smith's complaint asserted that officials of the New Jersey Division of Child Protection & Permanency ("DCP&P") infringed her constitutional and statutory rights by refusing to divulge the identity of the person who alleged that Smith had abused her children. We agree with the District Court that Smith's rights were not violated by the decision to preserve the anonymity of the child abuse reporter. Accordingly, we will affirm the District Court's judgment.

## I.

Smith lives in New Jersey and is the mother and caretaker of two minor children.[1] Her complaint alleges that "[o]n at least two occasion[s] [during 2015], DCP&P . . . contacted [her] to inform her that there were allegations against her of abuse and neglect for which the DCP&P assert[ed] that it [was] required by law to perform an investigation pursuant to *N.J.S.A.* § 9:6-8.11 based on . . . an anonymous phone call . . . ." (App. at 58.) After conducting its investigations, DCP&P concluded that the allegations were

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] We rely upon the facts alleged in Smith's complaint, which we accept as true for purposes of our decision. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 572 (2007) (citations omitted).

2

unfounded. Smith alleges that she then "requested information regarding the alleged anonymous person who made the reports to DCP&P . . . , but was informed by Defendants that they could not provide the information without a Court Order." *Id.* at 59.

Asserting that the refusal to divulge the requested information violated her rights under the Fifth and Fourteenth Amendments to the United States Constitution, as well as the New Jersey Civil Rights Act, N.J.S.A. § 10:6-2, Smith brought this action in state court to compel "the Defendants to provide [her] with a copy of their files regarding [her] and with the contact information and name of the alleged anonymous reporter of abuse and neglect[.]" (App. at 60, 61.) Named as Defendants were DCP&P; Lisa Von Pier in her official capacity as both the Director of DCP&P and the Assistant Commissioner of the New Jersey Department of Children and Families (DCF); Allison Blake in her official capacity as the Commissioner of DCF; and Eugene Adams and Steve Lopez in their official capacities.[2] DCP&P, Von Pier, and Blake ("Appellees") removed the case to the United States District Court for the District of New Jersey, and then moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6).

The District Court held a hearing on November 7, 2016, to address Appellees' motion to dismiss. At the hearing, DCP&P argued that it was entitled to Eleventh Amendment sovereign immunity because it did not qualify as a "person" under 42 U.S.C. § 1983. Following a colloquy with the District Court, Smith's counsel agreed to dismiss

---

[2] Adams and Lopez were administratively dismissed in state court due to improper service of Smith's complaint.

3

DCP&P "[f]or purposes of judicial expediency." (App. at 16.) Next, remaining

Appellees Von Pier and Blake sought Eleventh Amendment sovereign immunity because

Smith had sued them in their official capacities. In response, Smith argued—and the

District Court agreed—that Von Pier and Blake waived their sovereign immunity

defenses by opting to remove the case to federal court.[3]

Appellees argued in the alternative that, even if jurisdiction existed, Smith had

nevertheless failed to state a plausible claim for relief because her complaint lacked

factual support to show a violation of her constitutional rights. Appellees argued that

pursuant to New Jersey law the information Smith sought was confidential and could not

be released. Smith responded that Appellees' act of undertaking a child abuse

investigation, and then refusing to reveal the reporter's identity, violated her fundamental

right to raise her children free from governmental interference. This right, she argued,

---

[3] Even though we find that Smith's case fails on the merits, we nevertheless note that the sovereign immunity defense raised by Appellees on appeal lacks merit for substantially the same reasons as those stated by the District Court. Quoting *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 619 (2002), the District Court aptly observed that:

> [i]t would seem anomalous or inconsistent for a State both (1) to invoke federal jurisdiction, thereby contending that the "Judicial power of the United States" extends to the case at hand, and (2) to claim Eleventh Amendment immunity, thereby denying that the "Judicial power of the United States" extends to the case at hand.

(App. at 19-20.) *See Lombardo v. Pa., Dep't of Pub. Welfare*, 540 F.3d 190, 196 (3d Cir. 2008) ("[A] State may waive its immunity from suit by invoking federal court jurisdiction voluntarily."); *see also Stroud v. McIntosh*, 722 F.3d 1294, 1301 (11th Cir. 2013) ("We agree with the conclusions of the Third and Fifth Circuits . . . [and] hold that although the Board's removal to federal court waived its immunity-based objection to a federal forum, the Board retained its immunity from liability for a violation of the ADEA.").

4

outweighed any *parens patriae* interest held by the state in preserving the confidentiality of the anonymous caller. The District Court, noting that there is "a substantial reason for the confidentiality of reports of child abuse[,]" (App. at 42), ruled that the refusal to provide the requested information did not violate Smith's rights. The Court thus granted Appellees' motion and dismissed Smith's complaint with prejudice via an Order entered on November 8, 2016. Smith timely filed her Notice of Appeal.

## II.

The District Court had subject matter jurisdiction under 28 U.S.C. § 1331. We have jurisdiction over Smith's appeal from the final decision of the District Court under 28 U.S.C. § 1291. "[W]e review *de novo* a district court's grant of a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)." *Ballentine v. United States*, 486 F.3d 806, 808 (3d Cir. 2007).

## III.

On appeal, Smith argues that Appellees' refusal to release the information violates both her substantive due process and statutory rights. Regarding her constitutional claim, Smith argues that she is entitled to injunctive relief via release of the records because her parental rights outweigh the State's *parens patriae* interest in preserving the confidentiality of the anonymous child abuse reporter. As for the alleged statutory violation, Smith argues that she is entitled to relief through a prerogative writ of mandamus compelling Appellees to release the information pursuant to New Jersey law.

## A.

A state actor may be liable to a plaintiff for "the deprivation of any rights, privileges, or immunities secured by the Constitution . . . ." 42 U.S.C. § 1983. One such right is the fundamental right of parenting. *Lehr v. Robertson*, 463 U.S. 248, 256 (1983) ("The intangible fibers that connect parent and child have infinite variety . . . . It is self-evident that they are sufficiently vital to merit constitutional protection in appropriate cases."); *see also Croft v. Westmoreland Cty. Children & Youth Servs.*, 103 F.3d 1123, 1125 (3d Cir. 1997) ("We recognize the constitutionally protected liberty interests that parents have in the custody, care and management of their children."). The Fourteenth Amendment right to Due Process protects this right by "prohibit[ing] the government from interfering in familial relationships unless the government adheres to the requirements of procedural and substantive due process." *Croft*, 103 F.3d at 1125. To determine whether a parent's constitutionally protected rights are violated, "we must balance the fundamental liberty interests of the family unit with the compelling interests of the state in protecting children from abuse." *Id.* Parental rights are, therefore, not absolute, and the importance of "familial integrity" does not immunize a parent from a child abuse investigation. *Id.* (citing *Watterson v. Page*, 987 F.2d 1, 8 (1st Cir. 1993)). Indeed, the state's interest in protecting children by investigating allegations of child abuse has been described as "extraordinarily weighty." *Darryl H. v. Coler*, 801 F.2d 893, 902 (7th Cir. 1986). And we have observed that the governmental interest in protecting

6

children is particularly compelling "where the children need to be protected from their own parents." *Croft*, 103 F.3d at 1125.

In pursuit of this compelling interest, New Jersey requires "[a]ny person having reasonable cause to believe that a child has been subjected to child abuse or acts of child abuse" to "report the same immediately to [DCP&P] by telephone or otherwise." N.J. Stat. Ann. § 9:6-8.10 (2012). As a corollary to this legislatively imposed affirmative obligation to report suspected child abuse, New Jersey mandates that "[a]ll records of child abuse reports . . . , [and] all information obtained by [DCF] in investigating such reports . . . shall be kept confidential and may be disclosed only under [expressly authorized] circumstances . . . ." N.J. Stat. Ann. § 9:6-8.10a(a) (2012). Underlining the importance of maintaining confidentiality, New Jersey makes it a crime to "willfully permit[] or encourage[] the release of the contents of any record or report in contravention of" the confidentiality requirement. N.J. Stat. Ann. § 9:6-8.10b (1977). And to encourage persons to abide by the affirmative obligation to report suspected child abuse, New Jersey provides immunity from civil or criminal liability to any person making such a report. *See* N.J. Stat. Ann. § 9:6-8.13 (1987).

Smith contends that Appellees' adherence to the confidentiality mandate of this legislative scheme offends her "Fundamental Constitutional Right to ensure her family's integrity and to protect her family from malicious abuse of process . . . ." (Appellant's Br. at 8.) The case that Smith cites in connection with this assertion, *F.A. by P.A. v. W.J.F.*, 591 A.2d 691 (N.J. Super. Ct. App. Div. 1991), however, is inapposite. That opinion simply recognized that a person making a report of child abuse without

7

reasonable cause to do so may not be shielded from liability; it did not address the question of whether a parent could compel DCP&P to disclose of the identity of the anonymous reporter. On the contrary, the New Jersey court emphasized that the case before it involved only private parties, and that "[i]n a suit against [the state child protection agency] to reveal the identity of the reporter, such confidential information could only be disclosed in the specific circumstances set forth in" the legislation. *Id.* at 694.

In other contexts, courts have held that maintaining confidentiality of child abuse reports trumps the asserted constitutional right. For instance, in *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987), the Court held that an accused parent's Confrontation Clause rights yielded to the state's "compelling interest in protecting its child-abuse information." *Id.* at 60. The Court explained that if such "records were made available to defendants, even through counsel, it could have a seriously adverse effect on Pennsylvania's efforts to uncover and treat abuse." *Id.* In the context of civil actions, the importance of maintaining confidentiality has been cited as justifying protective orders that preclude plaintiffs from learning the identity of child abuse reporters. *See, e.g.*, *DeLeon v. Putnam Valley Bd. of Educ.*, 228 F.R.D. 213, 221 (S.D.N.Y. 2005); *Velez v. Reynolds*, No. 02 Civ. 8315 JGK DFE, 2003 W.L. 22126962, at *3 (S.D.N.Y. Sept. 15, 2003). In this matter, Smith's asserted interest in pursuing a possible malicious abuse of process action against the anonymous reporter(s) is not sufficient to overcome the compelling interest in assuring that witnesses of suspected child abuse may report what they have observed without fear of disclosure and reprisal. *See Ritchie*, 480 U.S. at 60-61. Accordingly, the

8

District Court correctly held that Appellees' refusal to provide Smith the information she demanded did not violate her constitutional rights.

**B.**

Smith also sought relief in the nature of a writ of mandamus under New Jersey law. Such a writ may be "given by a court to a government official that commands the performance of a specific ministerial act or duty, or compels the exercise of a discretionary function . . . ." *Vas v. Roberts*, 14 A.3d 766, 774 (N.J. Super. Ct. App. Div. 2011) (citations and internal quotation marks omitted). "A ministerial duty is one that is absolutely certain and imperative, involving merely the execution of a set task . . . ." *Id.* (citations and internal quotation marks omitted).

Smith argues that the enumerated exception to confidentiality set forth in N.J. Stat. Ann. § 9:6-8.10a(b)(19) applies to her case. This section provides that DCP&P must release the records to "[a] parent . . . when the information is needed in a department matter in which that parent . . . is directly involved . . . only to the extent necessary for the requesting parent . . . to discuss services or the basis for the department's involvement or to develop, discuss, or implement a case plan for the child . . . ." *Id.* Smith does not meet this exception because DCP&P did not implement a case plan for her children and did not otherwise take any action against her. Moreover, because the child abuse allegations were unfounded, Smith has not shown that she needs to learn the basis for the DCP&P's investigation. We thus find that Smith's complaint does not establish the existence of a ministerial duty the performance of which may be compelled by writ of mandamus. Nor does it show that Appellees failed to exercise a discretionary function.

9

**IV.**

For these reasons, we will affirm the Order of the District Court entered on November 8, 2016.